IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br>1411 K St. NW, Suite 1300<br>Washington, D.C. 20005,<br><br>        *Plaintiff*,<br><br>v.<br><br>U.S. OFFICE OF MANAGEMENT AND BUDGET,<br>725 17th Street, NW<br>Washington, DC 20503<br><br><br><br>        *Defendant.* | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Case No: _____ |

# INTRODUCTION

1. The Center for Biological Diversity ("Center") brings this action to compel the United States Office of Management and Budget ("OMB") to disclose records under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").

2. The records requested relate to the current administration's directive to agencies to use assorted emergency powers "to the maximum extent permissible under applicable law . . . to facilitate the Nation's energy supply." Exec. Order No. 14156, *Declaring a National Energy Emergency*, 90 Fed. Reg. 8,433, 8,435 (Jan. 29, 2025). The records requested consist of discrete reports, which OMB should have received from various agencies, that should contain lists of activities that agencies plan to expedite through emergency processes under the Endangered

1

Species Act ("ESA"), the Clean Water Act ("CWA") and other "emergency Army Corps permitting provisions." *Id.* at 8,434-35.

3. Under 60 C.F.R. § 402.05, Federal agencies may engage in "emergency consultation" with the United States Fish and Wildlife Service ("FWS") or the National Marine Fisheries Service ("NMFS") to meet their affirmative duties under the ESA. During ongoing "emergency circumstances" that create an immediate need, agencies may use "alternative procedures" to "consult in an expedited manner, . . . informally" to ensure that their activities are "not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species." 16 U.S.C. § 1536(a)(2), 60 C.F.R. § 402.05. However, in circumstances where the emergency is prolonged, these "alternative procedures" may pose dangers for protected species since it is only once the emergency is "under control" that agencies must initiate formal consultation, justify the use of "expedited consultation," and finally determine the "impacts to endangered species . . . and their habitats." 60 C.F.R. § 402.05.

4. Some statutes administered by the U.S. Army Corps of Engineers ("USACE" or "Corps") also create emergency powers. Under 33 C.F.R. § 325.2(e)(4), the Corp is allowed to "approve special processing procedures in emergency situations." The regulations provide a narrow definition of economic emergencies: "a situation which would result in . . . an immediate, unforeseen, and significant economic hardship if corrective action requiring a permit is not undertaken within a time period less than the normal time needed to process the application under standard procedures." *Id.* Moreover, even during emergencies, USACE regulations require the agency to make "reasonable efforts" to receive comments from all stakeholders. *Id.* These special procedures can be applied to a range of permit applications received by the Corps.

2

5. Executive Order 14156 purports to "declare" a "national energy emergency" based on the claim that energy production in the United States is "inadequate" and must be vastly and rapidly increased. Exec. Order No. 14156, *Declaring a National Energy Emergency,* 90 Fed. Reg. 8,433, 8,433 (Jan. 20, 2025). To this end, the Executive Order orders agencies to refashion the above mentioned emergency authorities into their default procedures for any activities that involve the production or transportation of "energy resources" like oil and gas or coal. *Id*. The ESA's emergency consultation regulations are intended for acute emergencies that are so exigent that the usual procedures for consultation cannot be followed as a practical matter. The USACE regulations are similarly meant for "immediate, unforeseen" events. Neither are designed for protracted efforts at an executive restructuring of the entire energy economy.

6. Under Sections 4 and 5 of this E.O., agencies were directed to prepare discrete, and specific records to comply with the E.O., the ESA emergency consultation regulations, and USACE's emergency procedures regulations. *Id.* at 8,434-35. These reports are the documents sought by this FOIA request — the emergency consultation summary reports and status reports, which agencies were instructed to submit to OMB every thirty days beginning January 20, 2025. *Id.* at 8,434. These reports should provide lists of all active and planned actions that agencies have decided will contribute to rectifying the President's open-ended energy emergency.

7. These records are subject to FOIA and are extremely time-sensitive given that government agencies like the U.S. Bureau of Land Management, U.S. Forest Service, Federal Energy Regulatory Commission, and others, along with the Service and Army Corps of Engineers, may be effectively rubber-stamping energy exploration, production, and transportation projects around the country under the guise of an energy emergency. Under these emergency powers, projects with potentially devastating impacts to some of the nation's most

critically endangered species and sensitive waterways may be advanced without full consideration of their potential consequences until *after* the President has decided, at some unknown future time, that the energy emergency has concluded. During E.O. 14156's purported "national emergency," myriad listed species — such as the greater sage grouse and the lesser prairie chicken — could be denied needed protections that are mandated by the ESA and could thereby be driven closer to extinction.

8. Similarly, rubber-stamped, emergency expedited Corps permits lacking proper upfront review of impacts to our nation's sensitive waterways could have immediate, detrimental harms on aquatic habitats for imperiled species. This could include dredge or fill within wetlands without any of the mandatory minimization and mitigation of impacts to these valuable ecosystems. Preventing extinction of imperiled species and degradation of their critical habitat is core to the mission of the Center, as well as to the ESA, 16 U.S.C. § 1531, and the CWA, 33 U.S.C. § 1251.

9. The Center and its members are deeply interested in, and affected by, how these emergency consultations could harm, undermine, or negate the Center's longstanding efforts to protect the environment, endangered and threatened species, their irreplaceable, critical habitats, and the livability of our planet.

10. Prompt access to these records is necessary to realize FOIA's purpose of transparency in government operations. FOIA establishes clear deadlines and requirements for FOIA responses. As discussed further below, Defendant is in violation of these statutory duties.

11. Accordingly, the Center seeks (1) declaratory relief establishing that OMB has violated FOIA; and (2) injunctive relief ordering OMB to make an immediate determination on

the Center's FOIA requests and promptly release all requested records and information, including all reasonably segregable portions of any lawfully exempt records, by a date certain.

## JURISDICTION AND VENUE

12. This Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331 because this action arises under FOIA. Venue vests in this Court under 5 U.S.C. § 552(a)(4)(B), which provides venue for FOIA cases in this district and because the responsive records may be found in this district.

13. This Court has authority to grant the requested declaratory relief pursuant to 28 U.S.C. § 2201 and 5 U.S.C. § 706; authority to grant the requested injunctive relief pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 2202; and otherwise provide relief using the court's equitable powers.

## PARTIES

14. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("Center") is a nonprofit organization with offices and staff throughout the United States. The Center works through science, law, and policy to maintain and increase protections for air and water; plants, animals, and their native habitats; a livable climate; public lands; and healthy communities. The Center has more than 93,000 active members throughout the United States and the world.

15. The Center is the requester of the information and records at issue. The organization and its members are harmed by OMB's failure to disclose the requested information and records that are responsive to the Center's FOIA requests. These violations of law injure the Center by preventing the Center from understanding how key provisions of the CWA, the ESA and their implementing regulations are being interpreted and possibly violated by USACE and the Departments of the Interior and Commerce.

16. This information and the Center's subsequent analyses of it will help to inform and prioritize the Center's organizational mission, including by helping the Center make critical choices about where to direct resources and develop alternate strategies. The Center will also share the requested information with its members and with the public in general to inform them about coming threats to endangered species and habitats and about potential avenues for response. The requested records and information will also be used to inform Congressional representatives and their staffs about threats to the protected species and habitats.

17. This injury will be redressed if the Court orders OMB to disclose all requested records.

18. Defendant OFFICE OF MANAGEMENT AND BUDGET ("OMB") is a federal agency, within the Executive Office of the President of the United States, that is responsible for producing the President's budget proposal and promoting the implementation of the President's policies across the Executive Branch. OMB is a federal governmental agency within the meaning of FOIA and is in possession and control of records responsive to the Center's FOIA requests. As such, it is subject to FOIA pursuant to 5 U.S.C. § 552(f) and is responsible for fulfilling the Center's FOIA requests.

**STATUTORY BACKGROUND**

19. FOIA's primary purpose is to improve government transparency and accountability by requiring the disclosure of agency records and information. It establishes the public's right to access all federal agency records, 5 U.S.C. § 552(a), unless one or more narrow statutory exemptions apply, *id*. § 552(b).

20. Recognizing that the timely disclosure of requested records is essential to fulfilling its purpose, FOIA imposes strict and rigorous deadlines for agencies to respond to

FOIA requests for specific information. Within twenty business days of receiving a request, an agency must (1) determine if it will release the requested records, and (2) notify the requester of (a) its determination and reasons for it, (b) the right to seek assistance from the FOIA Public Liaison, and (c) the right to appeal an adverse determination. *Id.* § 552(a)(6)(A)(i); 5 C.F.R. § 1303.40(a).

21. FOIA provides only limited circumstances under which a federal agency may take longer than twenty business days to make a determination. First, the agency may toll the twenty business day deadline for up to ten additional business days while the agency is waiting for information that it has reasonably requested from the requester. 5 U.S.C. § 552(a)(6)(A)(ii)(I). Second, the agency may also toll the twenty business day deadline for up to ten additional business days if it needs to clarify with the requester any issues regarding fee assessment. *Id.* § 552(a)(6)(A)(ii)(II).

22. Additionally, if the agency faces "unusual circumstances," the agency may extend the twenty business day deadline if the agency sets "forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched." *Id.* § 552(a)(6)(B)(i). No extension, however, should exceed ten business days unless the agency provides written notice to the requester explaining the "unusual circumstances" requiring an extension, establishes the date on which the agency expects to make the determination, and provides the requester with "an opportunity to limit the scope of the request so that it may be processed within that time limit or an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request." *Id.* § 552(a)(6)(B)(ii).

23. Under FOIA, "unusual circumstances" are defined as "the need to search for and collect the requested records from field facilities or other establishments that are separate from

the office processing the request[,]" or "the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request," or "the need for consultations . . . with another agency having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject-matter interest therein." *Id.* § 552(a)(6)(B)(iii).

24. Unless an agency subject to FOIA properly establishes a different timeline for disclosing responsive records, according to the above provisions, FOIA's mandate to make public records "promptly available" to a requester requires federal agencies to provide responsive records to a requester within or shortly after the twenty day statutory deadline. *Id.* § 552(a)(6)(A)(i).

25. Agencies must make a reasonable effort to maintain and search for records so all responsive records can be identified and reproduced. *Id.* § 552(a)(3)(B)–(D).

26. In certain limited instances, an agency may withhold responsive records pursuant to nine specific statutory exemptions. *Id*. § 552(b). This court has held that these exemptions "must be narrowly construed" given FOIA's primary objective of transparency and disclosure of information, not secrecy. *Election Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 522 (D.C. Cir. 2015); *see Leopold v. United States DOJ*, 94 F.4th 33, 37 (D.C. Cir. 2024). An agency bears the burden of proof if it claims any exemption applies to withhold responsive documents. *Id*. §552(a)(4)(B). Even where records may be exempt from disclosure, FOIA expressly requires agencies to disclose reasonably segregable portions of those records. *Id*. § 552(b).

27. When an agency responds to a request before the requester has filed suit, the requester must administratively appeal a denial and allow the agency at least twenty working

days to adjudicate that appeal. *Id.* § 552(a)(6)(A)(ii); *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 63 (D.C. Cir. 1990).

28.    FOIA grants this Court jurisdiction "to enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.* § 552(a)(4)(B).

## STATEMENT OF FACTS

### A. THE CENTER'S APRIL 9, 2025 REQUEST TO OMB

29.    On April 9, 2025, the Center submitted a FOIA request to OMB requesting records related to the E.O. 14156 directive to all Federal agencies to prepare summary reports and status reports regarding the use of the ESA's emergency consultation procedures under the ESA.

30.    OMB has not yet released any records in response to this request and has informed the Center that no release is likely until three to four years from the date of their response. The communications regarding this request, as well as contextual information about the records that are the subject of the request, are summarized below.

31.    On January 20, 2025, President Trump signed Executive Order 14156, *Declaring a National Energy Emergency*. Section 5(a)(i) of this E.O. directed all federal agencies to "identify planned or potential actions to facilitate the Nation's energy supply that may be subject to the regulation on consultations in emergencies, 50 CFR 402.05." 90 Fed. Reg. at 8,435. Section 5(a)(ii) directs all agencies to provide summary reports "listing such actions" to OMB within 30 days — i.e., by February 19, 2025. *Id.*

32.    Section 5(c) of the same Executive Order directs all agencies to prepare and submit to OMB "status reports," that "list actions taken" in furtherance of the summary reports

9

required by E.O. Section 5(a)(ii), including "the status of any previously reported planned or potential actions, and any new planned or potential actions within these categories," and to submit such status reports "every 30 days for the duration of the national emergency." *Id*.

33. Thus, as of the date of this Complaint, OMB should have received summary reports from all agencies, and five status reports from each agency — i.e., the records requested by the Center— in its possession and control, which describe the actions that are planned for energy production and transportation.

34. On April 9, 2025, the Center submitted, *via* electronic mail, a FOIA request to OMB for records from January 21, 2025 to the date that OMB conducts the relevant search, requesting:

> 1. The summary reports sent to the Secretary of the Interior, as required by Section 5(a)(ii) of Executive Order 14156 ("E.O. 14156") of January 20, 2025 ("Declaring a National Energy Emergency"). Section 5(a)(ii) directs all agency heads to provide these summary reports within 30 days of the date of E.O. 14156 (*i.e.*, by February 28, 2025); and
>
> 2. The status reports sent to the Secretary of the Interior, as required by Section 5(c) of E.O. 14156. Section 5(c) directs all agency heads to provide these status reports within 30 days of the initial summary report required by Section 5(a)(ii) of E.O. 14156, and at least every 30 days thereafter.

35. On April 11, 2025, OMB acknowledged receipt of the Center's FOIA request. OMB further informed the Center that the request "has been logged in and it [was] being processed" and provided the reference number of 2025-1217 for the request. Pursuant to FOIA's mandatory statutory deadlines, OMB was required to make a determination within 20 working days on the Center's FOIA request, i.e. by May 7, 2025. 5 U.S.C. § 552(a)(6)(A)(i); 5 C.F.R. § 1303.40(a).

10

36. On May 8, 2025, twenty-one workdays after the submission of its request, the Center contacted the FOIA Office at OMB requesting "an update on where this request stands along with an estimated date of completion for a determination, as required by 5 U.S.C. § 552(a)(7)(B)(ii)."

37. On June 9, 2025, OMB's FOIA Team responded to the Center's request that their "best estimate at this time for completing the processing of your FOIA request is 36-48 months." OMB referenced a "significant increase in new FOIA matters and a shortage of FOIA processors." According to OMB, this FOIA "[sat] at number 1,826 out of a total of more than 2,120 requests in our backlog queue."

38. On June 18, 2025, the Center submitted an appeal letter to the FOIA Appeals Office at OMB seeking review of OMB's constructive denial of the Center's April 9, 2025 FOIA request. In that appeal, the Center explained that OMB had constructively denied the Center's request by failing to provide records concerning "a straightforward subject matter with a limited temporal scope" held by "one specific record custodian." The Center also argued that OMB had failed to provide sufficient justification for its estimated date of completion of three to four years.

39. On June 20, 2025, OMB acknowledged receipt of the Center's appeal. OMB assigned reference number 2025-1585 to this appeal.

40. On July 18, 2025, the Center emailed OMB, requesting an update on the status of its appeal, 2025-1585.

41. That same day, OMB provided a formal response to the Center's appeal, stating that the Center's appeal had been granted because OMB "did not respond to your April 9, 2025 FOIA request within twenty working days as required by the FOIA statute." However, in granting this appeal, OMB did not provide a revised estimated date of completion, any further

11

updates on the processing of the Center's request, and no responsive records. OMB informed the Center that "[i]f you consider this to be a denial of your appeal, judicial review of my action on your appeal is available to you in accordance with the provisions of 5 U.S.C. § 552(a)(4)."

42. During the eighty-six business days that have passed since the Center submitted its request, OMB has failed to provide an estimated date of completion more specific than the original three to four years from the date of submission provided on June 9, in violation of FOIA. 5 U.S.C. § 552(a)(6)(A)(i); 5 C.F.R. § 1303.40(a).

43. OMB has not requested additional information from the Center about its FOIA requests, *see* 5 U.S.C. § 522(a)(6)(A), 5 C.F.R. § 1303.40(a), nor has it notified the Center of any "unusual circumstances" that prevent it from complying with FOIA's deadline for a determination, 5 U.S.C. § 522(a)(6)(B); 5 C.F.R. § 1303.40(c).

44. OMB's failure to communicate constructively with the Center or to make a timely determination and "promptly" provide all responsive records to the Center undermines FOIA's primary purpose of transparency and openness in government and violates statutory mandates.

B. **THE CENTER'S APRIL 15 REQUEST TO OMB**

45. On April 15, 2025, the Center submitted a FOIA request to OMB seeking records related to E.O. 14156's directive to all Federal agencies to prepare summary reports and status reports regarding the use of emergency procedures under the CWA "and Other Statutes Administered by the Army Corps of Engineers." 90 Fed. Reg. at 8,434.

46. OMB has not provided the Center with a determination on this request, and the Center has received no contact from OMB regarding this request apart from an automated email notice confirming receipt. OMB also has not released records in response to the request. The

communications regarding this request, as well as contextual information about the records that are the subject of the request, are summarized below.

47. On January 20, 2025, President Trump signed Executive Order 14156, *Declaring a National Energy Emergency*. Section 4(a)(i) directed all Federal agencies to "identify planned or potential actions to facilitate the Nation's energy supply that may be subject to emergency treatment pursuant to the regulations and nationwide permits promulgated by the Corps, or jointly by the Corps and EPA, pursuant to section 404 of the Clean Water Act, 33 U.S.C. 1344, section 10 of the Rivers and Harbors Act of March 3, 1899, 33 U.S.C. 403, and section 103 of the Marine Protection Research and Sanctuaries Act of 1972, 33 U.S.C. 1413 (collectively, the 'emergency Army Corps permitting provisions')." 90 Fed. Reg. at 8,434.

48. Section 4(c) of the Executive Order directs all agencies to prepare and submit to OMB "status reports," "that "list actions taken" that could be subject to emergency Army Corps permitting provisions, including "the status of any previously reported planned or potential actions, and any new planned or potential actions," and to submit such status reports "every 30 days for the duration of the national emergency." *Id* at 8,435.

49. Thus, as of the date of this Complaint, OMB should have received five (5) status reports from each agency — the records requested by the Center — in its possession and control, describing the actions that are planned for energy production and transportation.

50. On April 15, 2025, the Center submitted, *via* electronic mail, a FOIA request to OMB for records from January 21, 2025 to the date that OMB conducts the relevant search, including: "the summary and status reports pursuant to Section 4(c) of the Executive Order *Declaring a National Energy Emergency*. 90 Fed. Reg. 8433 (Jan. 20, 2025)."

51. On April 16, 2025, OMB acknowledged receipt of the Center's FOIA request. OMB further informed the Center that the request "has been logged in and it [was] being processed" and provided the reference number of 2025-1297 for the request.

52. On May 14 2025, twenty-one workdays after the submission of its request, the Center contacted the FOIA Office at OMB requesting "an update on where this request stands." To date, OMB has not replied to this letter and the Center has received no further communications regarding its April 15 FOIA request.

53. Pursuant to FOIA's mandatory statutory deadlines, OMB was required to make a determination on the Center's FOIA request by May 13, 2025. 5 U.S.C. § 552(a)(6)(A)(i); 5 C.F.R. § 1303.40(a). More than twenty-one business days have passed without an acknowledgement of this request, a determination on the request or the release of any records from OMB, in violation of FOIA. *Id.*

54. OMB has not requested additional information from the Center about its April 15 FOIA request, *see* 5 U.S.C. § 522(a)(6)(A), 5 C.F.R. § 1303.40(a), nor has it notified the Center of any "unusual circumstances" that prevent it from complying with FOIA's deadline for a determination. *Id.* § 522(a)(6)(B); 5 C.F.R. § 1303.40(c).

55. OMB's failure to communicate constructively with the Center or to make a timely determination and "promptly" provide all responsive records to the Center undermines FOIA's primary purpose of transparency and openness in government and violates statutory mandates.

## PRAYER FOR RELIEF

## FIRST CLAIM FOR RELIEF

**1. OMB has Failed to Comply with FOIA's Mandatory Determination Deadline.**

56. The Center re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

57. The Center properly requested records within the control of OMB through its requests of April 9 and April 15.

58. The Center has a statutory right to a lawful final determination from OMB on the Center's April 9 and April 15 requests in a manner that complies with FOIA. 5 U.S.C. § 552(a)(6)(A)(i).

59. In order to make a lawful "determination" on each request, OMB must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the "determination" is adverse.

60. The deadline for OMB to provide a determination on the Center's request has lapsed because more than twenty working days have passed since OMB received the Center's requests and OMB has not claimed the extension of ten working days for either request.

61. OMB's failure to provide a lawful determination on the Center's requests by FOIA's mandatory deadline violates the Center's right to a determination.

62. OMB has no lawful basis under FOIA for its delay and has provided no lawful basis to withhold a determination in response to the Center's requests.

63. The Center has exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

64. The Center's organizational activities will be adversely affected if OMB continues violating FOIA's requirement to provide a determination on each request.

65. Based on the nature of the Center's organizational activities, it will continue to employ FOIA's provisions in records requests to OMB in the foreseeable future.

66. Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, OMB will continue to violate the Center's right to receive a determination in response to the Center's requests for records under FOIA.

## SECOND CLAIM FOR RELIEF

**2. OMB has Failed to Conduct Adequate Searches for Responsive Records,**

67. Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

68. The Center has a statutory right to have OMB process the Center's April 9, 2025 and April 15, 2025 FOIA requests in a manner that complies with FOIA. 5 U.S.C. § 552(a)(3).

69. OMB violated the Center's rights in this regard because OMB has unlawfully failed to conduct an adequate search reasonably calculated to locate all records responsive to the Center's FOIA requests. *Id.*

70. OMB has no lawful basis under FOIA for its failure to conduct an adequate search for records responsive to the Center's April 9 and April 15 records requests.

71. Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, OMB will continue to violate the Center's rights under FOIA to an adequate search for records responsive to the Center's April 9 and April 15 records requests.

## THIRD CLAIM FOR RELIEF

**3. OMB has Failed to Promptly Disclose all Responsive Records.**

72. Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

73. The Center has a statutory right to the prompt disclosure of requested records. 5 U.S.C. § 552(a)(3)(A).

74. OMB has violated the Center's rights in this regard by withholding records that are responsive to the Center's April 9 and April 15 FOIA requests.

75. OMB has provided no lawful basis to withhold the requested records pursuant to any of FOIA's nine exemptions to mandatory disclosure or to withhold any segregable, nonexempt portion of the requested records. *See id.* § 552(a)(8)(A), (b)(1)–(9).

76. Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, OMB will continue to violate the Center's right to promptly receive all records responsive to its FOIA requests.

## **PRAYER FOR RELIEF**

WHEREFORE, the Center respectfully requests that this Court:

(A) Declare that the Defendant violated FOIA by failing to provide a lawful determination within twenty workings days on the Center's April 9, 2025 FOIA request (Reference Number 2025-1217, Appeal Number 2025-1585), and the Center's April 15, 2025 FOIA request (Reference Number 2025-1297), by failing to conduct an adequate search for records responsive to these requests, and by failing to promptly disclose all records responsive to these requests;

(B) Order the Defendant to immediately make a determination on both the Center's April 9, 2025 FOIA request (Reference Number 2025-1217, Appeal Number 2025-1585), and the Center's April 15, 2025 FOIA request (Reference Number 2025-1297);

17

(C) Order the Defendant to search for any and all responsive records to the Center's April 9, 2025 FOIA request (Reference Number 2025-1217, Appeal Number 2025-1585), and the Center's April 15, 2025 FOIA request (Reference Number 2025-1297), using search methods reasonably likely to lead to discovery of all responsive records with the cut-off date for such search being the date the search is conducted;

(D) Order the Defendant to promptly produce, by a date certain, all nonexempt responsive records or segregable portions of the requested records and a *Vaughn* index of any responsive records or portions of responsive records withheld under a claim of exemption, at no cost to Plaintiff;

(E) Enjoin the Defendants from continuing to withhold any nonexempt responsive records or segregable portions of the requested records;

(F) Retain jurisdiction over this action to ensure the appropriate processing of the Center's FOIA requests and to ensure that no agency records or portions of the requested records are improperly withheld;

(G) Award the Center its attorneys' costs and reasonable attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E) or 28 U.S.C. § 2412; and

(H) Grant such other and further relief as the Court may deem just and proper.

DATED: August 12, 2025

Respectfully submitted,

/s/ *Margaret A. Coulter*
Margaret A. Coulter (DC Bar No. 1034249)
Center for Biological Diversity
1411 K Street NW, Suite 1300
Washington, DC 20005
Tel: (202) 961-4820
Email: mcoulter@biologicaldiversity.org

/s/ *Ivan Ditmars*
Ivan Ditmars* (CA Bar No. 359879)
Center for Biological Diversity
2100 Franklin St., Suite 375
Oakland, CA 94612
Tel: (510) 844-7158
Email: iditmars@biologicaldiversity.org
**Pro Hac Vice* application pending*

*Attorneys for Plaintiff*
